UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-CV-23990 MORENO/GOODMAN

ODALYS DE LA CARIDAD
GARCIA,
    Plaintiff,

v.

KILOLO KIJAKAZI,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Odalys Garcia and Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 15; 18]. The Commissioner's summary judgment motion also served as her opposition response to Garcia's motion. [ECF No. 19]. Garcia filed a reply to the Commissioner's response. [ECF No. 20]. According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Garcia's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

I.   **Procedural Background**

On June 13, 2019, Garcia applied for supplemental security income, alleging a disability with an onset date of January 1, 1986[1]. (R. 207-08).[2] Garcia alleges disability due to severe depression and anxiety, fibromyalgia, endometriosis, "apendigitis [sic] epiploic," and nephrotic syndrome. (R. 229). The Commissioner denied the application initially and on reconsideration. (R. 118; 126). After a hearing on March 17, 2021 (R. 19), Administrative Law Judge Lornette Reynolds (the "ALJ") concluded that Garcia was not disabled. (R. 30). The Appeals Council denied review of the ALJ's decision. (R. 1-3). The Commissioner's final decision is now subject to review.

II.   **Factual Background**

Garcia was 40 years old on the date of the ALJ's decision. (R. 207). Garcia has a GED and no past relevant work. (R. 229-30). At the time of the hearing, Garcia lived with her mother in her mother's home. (R. 44; 208). Garcia is able to drive to her medical appointments, to obtain medication, and to attend religious services, as well as venture into the community to "preach the word." (R. 45-47).

III.   **Applicable Legal Standards**

---

[1]   The ALJ's decision states that Garcia alleges disability beginning November 1, 2019. (R. 19). Neither party raises as an issue this six-month inconsistency in their pleadings.

[2]   Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 13].

2

### A. *Standard of Review*

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1. **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2. **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3. **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine the claimant's residual functional capacity ("RFC"); and then determine:

4. **Step four**. Based on the RFC, can the claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5. **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir.

1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV. The ALJ's Findings

In denying Garcia's claim for benefits, the ALJ followed the sequential five-step evaluation process for social-security claims. (R. 19-30). At step one, the ALJ concluded that Garcia had not engaged in substantial gainful activity since January 28, 2019, the application date. (R. 21).

At step two, the ALJ concluded that Garcia had the following severe impairments: Congenital canal stenosis and degenerative joint disease of L4-L5; Osteopenia; Endometriosis, Status post hysterectomy; Major depressive disorder; and Anxiety disorder. (R. 21).

At step three, the ALJ concluded that Garcia did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22-23). Next, the ALJ determined that Garcia has the RFC to

> perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ladders, ropes, or scaffolds. She can frequently climb ramps or stairs. The claimant can frequently balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, vibration, and hazards, such as unprotected heights and dangerous machinery. She can apply commonsense understanding to carry out simple tasks and instructions. The claimant can deal with standardized situations with occasional or no variables in or from these situations encountered on the job, consistent with reasoning level [ ] 1. She can have occasional interaction with the public on routine matters, but must not perform greeter-type positions.

(R. 23).

At step four, the ALJ concluded that Garcia has no past relevant work experience. (R. 28).

Lastly, at step five, the ALJ found that there are jobs existing in significant numbers in the national economy that Garcia can perform, including Cleaner, Housekeeping; Bottling Line Attendant; and Bagger. (R. 28-29). Accordingly, the ALJ found that Garcia has not been under a disability from January 28, 2019, through the date of the ALJ's decision (April 21, 2021). (R. 30).

**V.    Analysis**

Garcia alleges two errors in the ALJ's decision: (1) the VE substantially overstated the number of available jobs, which means the ALJ's step five finding is not based on

5

substantial evidence; and (2) the ALJ's RFC does not properly account for all of Garcia's physical limitations. [ECF No. 18]. Garcia bases her first argument on her post-hearing research into the number of available jobs using Job Browser Pro and O*Net. As support for her second argument, Garcia cites at length specific medical records detailing her ailments and injuries.

The Commissioner says that Garcia's first argument is foreclosed by Eleventh Circuit law and notes that Garcia did not challenge the VE's testimony during the hearing. Further, in the Commissioner's view, Garcia's second argument fails because these medical records contain no information revealing the *impact* of Garcia's medical conditions on her ability to work.

For the reasons discussed below, the Undersigned agrees with the Commissioner.

### A. *The VE's Testimony Constituted Substantial Evidence Upon Which the ALJ Could Rely*

VEs are used by ALJs to determine if sufficient jobs exist in the national economy that the claimant can adjust to and perform. *Phillips*, 357 F.3d at 1240.

> A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy.

*Id.* An ALJ may rely solely on the testimony of a VE to make a step five determination that a claimant has the ability to find work in the national economy. *Mabrey v. Acting*

*Comm'r of Soc. Sec. Admin.*, 724 F. App'x 726, 730 (11th Cir. 2018).

Garcia claims the data presented by the VE regarding the availability of positions for each of the three identified jobs is substantially overstated. In support of this, Garcia details her *post-hearing* research -- using Job Browser Pro[3] and O*Net -- into the job data

---

[3] The Undersigned's research into Plaintiff's arguments uncovered a summary judgment motion filed by Plaintiff's counsel in another case, in which she made a drastically different -- and contradictory -- argument concerning the value of Job Browser Pro data and cited many regulations and agency memos which are relevant to the instant analysis and *undermine* the theory Plaintiff's counsel now advances:

> Job Browser Pro is a private program sold for commercial profit by SkillTRAN, and **has not** been granted administrative notice by the Social Security Administration pursuant to 20 CFR § 404.1566(d). Job Browser Pro and the information that it provides is untested, not peer reviewed and, in effect, does the impossible. That is, it takes current government jobs statistics, which are not reported by DOT Code and reports that data by DOT Code.
>
> ***
>
> Further, [Memorandum 09-2139, p. 3] notes that "While Occubrowse, SkillTRAN, OASYS, Job Browser Pro, Westlaw Direct, SSA Excellence, and 'Social Security CD Library' are useful electronic occupational reference tools, **they cannot be relied upon to produce results that always conform to SSA medical and vocational policy, nor do they replace reliance on SSA regulations and rulings, VE testimony, and adjudicative judgment and decision-making[.]**"

[20-cv-22914-WPD, ECF No. 27, pp. 13-14 (emphasis in original; footnote and some internal citations omitted)].

Curiously, in this case, Plaintiff's counsel, despite filing the motion containing the above-quoted excerpt more than a year before filing the instant motion, did not bring to the Court's attention the fact that the SSA **has not** given Job Browser Pro administrative

discussed by the VE. She continues by positing her own theories, suggestions, and possible interpretations, and ultimately concludes that the VE, using unverified methodology, substantially overstated the number of bottling line attendant, bagger, and housekeeping cleaner jobs in the national economy.

Garcia's analysis of the VE's purported error when testifying as to the number of available bottling line attendant and bagger jobs is simple. The VE testified that there were 11,000 jobs available for each of these professions, for a total of 22,000 jobs. Garcia says that she looked on Job Browser Pro -- which she claims is "frequently relied upon by VEs as a source of estimated jobs" -- and the program indicated that there were only 136 bottling line attendant and 1,684 bagger jobs available in the national economy. In each situation, Garcia says that "the discrepancy between the [VE's testimony about the number of available jobs] compared to the [number of jobs] that were estimated by Job Browser Pro is of such a vast disparity that the VE's testimony simply cannot constitute substantial evidence upon which the ALJ could reasonably rely." [ECF No. 15].

Garcia's housekeeping cleaner-focused argument, however, involves a bit more analysis. Garcia says that the VE's testimony that there were 103,000 housekeeping cleaner jobs in the national economy is substantially overstated because the VE:

> 1) fail[ed] to reduce the SOC group jobs numbers to account for jobs that are more than just unskilled, 2) underestimat[ed] the amount of walking and standing involved/ overestimat[ed] the amount of sitting involved, 3)

---

notice and, in fact, issued a memorandum explaining that the data in Job Browser Pro does **not** replace the testimony of the VE.

overestimat[ed] the number of full-time versus part-time positions, and 4) [failed] to properly account for [the] significant erosion of the occupational base resulting from the additional limitation to only occasional contact with the public.

The information which Garcia claims supports her contentions originates from O*Net and the U.S. Bureau of Labor Statistic's Occupational Requirements Survey ("ORS"). To reach her ultimate conclusion that there are only 1,722 actual jobs available in this category, Garcia employs speculative math, which she claims is "conservative."

However, contrary to Garcia's claim, she cannot be certain that the VE "failed" to properly consider what Garcia contends is relevant data, nor can she be certain that Job Browser Pro relies upon the same data and information available to the VE. This is because Garcia did not question the VE about his methodology. Essentially, Garcia's counsel engaged in post-hearing research and now argues -- not as an expert, but as an advocate -- that the VE's testimony, which Garcia neither objected to nor challenged, is based on a flawed methodology. This is impermissible.

"The Social Security Regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012). Based on his or her knowledge and expertise, a "VE's testimony is therefore substantial evidence, as it is relevant evidence that a reasonable person would accept as adequate to support the conclusion that there is work available in significant numbers in the national economy that [the claimant] is able to perform." *Curcio v. Comm'r*

9

*of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010).

"[The Eleventh Circuit] has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the [Occupational Employment Statistics]." *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 556 (11th Cir. 2019). Thus, even when a VE's job numbers conflict with the job numbers provided by the Bureau of Labor Statistics, an ALJ has no duty to investigate or resolve this conflict.

For a situation like this, the analysis in *Davis v. Berryhill*, No. 17-cv-293-N, 2018 WL 2208432 (S.D. Ala. May 14, 2018) is instructive. In *Davis*, the claimant raised, in her motion before the district court (for the first time), statistics from "SkillTran" and an argument that the Occupational Employment Statistics group contained multiple DOT codes, not just the one for the job described by the VE. In denying the claimant relief, the *Davis* court noted:

> The only testimony regarding the source of the vocation expert's numbers is the following exchange:
>
>> ALJ: And is your testimony consistent with the Dictionary of Occupational Titles?
>>
>> VE: With the exception of the reduction in numbers and that's based on my experience and familiarity with those types of jobs.

*Id.* at *6.

Here, like the claimant in *Davis*, Garcia did not ask any questions of the VE about

10

his method of calculation or the data upon which she was relying. *See HUNTER KEITH KOEHLER, Plaintiff, v. KILOLO KIJAKAZI, acting Comm'r of Soc. Sec., Defendant.*, No. 2:22-CV-210-JES-KCD, 2023 WL 1098234, at *6 (M.D. Fla. Jan. 30, 2023) ("The ORS data cannot serve as a basis for error because plaintiff did not confront the VE with this ORS data during the hearing, or otherwise present it to the ALJ, or present it to the Appeals Council.").

This can be contrasted by the actions of the claimant in *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020), a case relied upon by Garcia. Unlike the claimant's actions here, the claimant in *Goode* cross-examined the VE at length:

> The record shows that Ms. Goode's attorney repeatedly questioned the vocational expert regarding his flawed testimony, expressing multiple times to the ALJ that he did not find the testimony persuasive or credible and was trying to get "specifics." Moreover, after several attempts to get an answer from the vocational expert, the ALJ intervened and urged the attorney to move on. This is not a case in which the claimant failed to challenge or question the vocational expert's methodology or job numbers. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017) ("It is enough to raise the job numbers issue in a general sense before the ALJ. A claimant may do so by inquiring as to the evidentiary basis for a [vocational expert's] estimated job numbers[.]").

*Id.* at 1284 n.3; *see also* Carolyn Kubitscheck & Jon Dubin, Social Security Disability: Law and Procedure in Federal Court § 3:106 (2020 ed.) ("One is hard-pressed to understand how vocational expert testimony lacking even minimal methodological support, **when questioned**, meets the 'substantiality' threshold, particularly at step five of the proceedings where the burden of demonstrating the claimant's ability to make a work

11

adjustment to a significant number of jobs in the economy . . . has shifted from the claimant to the agency." (emphasis added))

The VE is not required to give statistics in support of his testimony. *Bryant*, 451 F. App'x at 839. Garcia is now asking the Undersigned to find fault with the ALJ's factual determinations based on post-hearing research. However, in assessing the ALJ's factual findings, the Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (some alterations in original). This proscribed analysis is exactly the type which Garcia is requesting this Court to use here.

As the Eleventh Circuit has stated: "We review only whether the ALJ's decision was supported by substantial evidence, and 'we will look only to the evidence actually presented to the ALJ.'" *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009–10 (11th Cir. 2020) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)). In *Valdez*, the Eleventh Circuit rejected the very argument Garcia is advancing and refused to consider post-hearing data in an attack on the VE's testimony about job availability. *Id.* at 1009.

Applying this principle, courts throughout this Circuit have repeatedly rejected arguments similar or identical to Garcia's. *See, e.g., Mesa v. Kijakazi*, No. 21-20424-CIV, 2022 WL 4369733, at *11 (S.D. Fla. May 11, 2022), report and recommendation adopted, No. 21-20424-CIV, 2022 WL 4366950 (S.D. Fla. Sept. 21, 2022) (rejecting the plaintiff's claim that the VE's testimony concerning job availability did not constitute substantial evidence

based on counsel's post-hearing research); *Rosa v. Kijakazi*, No. 8:20-CV-1440-TGW, 2022 WL 16540059, at *6 (M.D. Fla. Mar. 25, 2022) (same); *Dixon v. Kijakazi*, No. 20-82316-CIV, 2022 WL 2908497, at *13 (S.D. Fla. May 26, 2022), report and recommendation adopted, No. 20-CV-82316-RS, 2022 WL 2904549 (S.D. Fla. July 22, 2022) (same).

A court's review of an ALJ's decision is limited. The court may not substitute its own judgment for that of the ALJ. Nor is it appropriate to substitute the VE's uncontroverted testimony with Garcia's post-hearing speculation. The VE's expertise was stipulated to by Garcia at the hearing and his testimony constitutes substantial evidence upon which the ALJ could rely.

### B. *The ALJ'S RFC is Supported by Substantial Evidence*

Garcia challenges the ALJ's RFC finding that "[she] is capable of full-time light exertional work." According to Garcia, "the evidence suggests that [she] would be wholly incapable of engaging in, at the very least, the amount of standing and walking light exertional work entails, especially in the context of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently while simultaneously standing and walking throughout the course of an eight-hour workday."

As support for her argument, Garcia cites to her self-reported complaints of pain to medical doctors and to findings that she suffers from "hypoplastic T12 ribs; leva curvature of the lumbar spine; trace grade 1 retrolisthesis of L5 on S1; minimal intervertebral disc space narrowing at L5-S1; minimal L5/S1 facet degenerative changes;

13

mild degenerative changes of the bilateral sacroiliac joints; and nonaggressive appearing sclerotic lesions overlying the right superior acetabulum and left iliac wing measuring up to 1.3 cm, favored to represent bone islands."

Garcia also notes that "[b]etween November 2019 and January 2020, [she] attended 11 sessions of physical therapy" and "also attended 97 chiropractic sessions between December 2015 and February 2020 for back pain." Based on her course of treatment and the issues identified during her medical visits, Garcia avers that the ALJ "overestimate[d] [her] RFC" and "failed to properly assess how Garcia's spinal impairments may have reasonably impacted her RFC when considered in combination with the numerous other impairments the ALJ deemed were 'severe.'"

The Commissioner raises multiple responsive arguments. First, the Commissioner argues that the ALJ properly applied 20 C.F.R. § 416.920c, which governs the consideration of medical opinions in cases filed on or after March 27, 2017 and notes that Garcia has not claimed the ALJ failed to follow this regulation. Second, the Commissioner highlights the fact that the ALJ found the opinions of the state agency consultants -- who both opined that Garcia could perform light work as described in the RFC -- to be persuasive. Finally, the Commissioner contends that the ALJ was not required to evaluate the record evidence which Garcia cites under 416.920c's parameters because the evidence does not qualify as a medical opinion under the regulations.

The Commissioner's arguments are well taken, and Garcia does not challenge

14

them in her reply. Instead, Garcia repeats her previous arguments, often verbatim:

> *Compare* [ECF No. 15, pp. 20-21]
>
> Between November 2019 and January 2020, Garcia attended 11 sessions of physical therapy ([R.] 788-789, 793, 801, 811). Garcia also attended 97 chiropractic sessions between December 2015 and February 2020 for back pain. In January 2020, a physical examination performed by Joseph Accurso Jii, D.C., revealed postural deficits in the cervical region; cervical segmental dysfunction and loss of segmental range of motion, as well as spasm bilaterally; loss of cervical active range of motion; pain, discomfort, and loss of range of motion in the lumbar region; postural deficits in the lumbar region; lumbar segmental dysfunction and loss of segmental range of motion, as well as spasm bilaterally; loss of thoracic active range of motion; pain, discomfort, and loss of range of motion in the sacral region; postural deficit of sacral/pelvic tilt; sacral segmental dysfunction and loss of segmental range of motion, as well as spasm ([R.] 926).
>
> Thus, the ALJ here grossly overestimates Garcia's RFC because her finding that the claimant can perform light exertional work fails to properly account for reasonable limitations relating to the claimant's abilities to stand and walk for prolonged periods of time. Moreover, the ALJ failed to properly assess how Garcia's spinal impairments may have reasonably impacted her RFC when considered in combination with the numerous other impairments the ALJ deemed were "severe." At bottom, the ALJ's RFC finding here is necessarily deficient because it does not take into account all limitations arising from all impairments, even those that are "not severe," as required by SSR 96-8p. Had the ALJ complied with the regulations, the evidence would have overwhelmingly established that, at the very least, Garcia is far more limited than the ALJ finds, and that she is certainly incapable of performing the jobs of Bottling Line Attendant, Bagger, or Housekeeping Cleaner in any full-time, competitive capacity on a sustained basis.
>
> *with* [ECF No. 20, pp. 5-6]
>
> Between November 2019 and January 2020, Garcia attended 11 sessions of physical therapy ([R.] 788-789, 793, 801, 811). Garcia also attended 97 chiropractic sessions between December 2015 and February 2020 for back pain. In January 2020, a physical examination performed by Joseph Accurso

Jii, D.C., revealed postural deficits in the cervical region; cervical segmental dysfunction and loss of segmental range of motion, as well as spasm bilaterally; loss of cervical active range of motion; pain, discomfort, and loss of range of motion in the lumbar region; postural deficits in the lumbar region; lumbar segmental dysfunction and loss of segmental range of motion, as well as spasm bilaterally; loss of thoracic active range of motion; pain, discomfort, and loss of range of motion in the sacral region; postural deficit of sacral/pelvic tilt; sacral segmental dysfunction and loss of segmental range of motion, as well as spasm ([R.] 926).

Thus, the ALJ here grossly overestimates Garcia's RFC because her finding that the claimant can perform light exertional work fails to properly account for reasonable limitations relating to the claimant's abilities to stand and walk for prolonged periods of time. Moreover, the ALJ failed to properly assess how Garcia's spinal impairments may have reasonably impacted her RFC when considered in combination with the numerous other impairments the ALJ deemed were "severe." At bottom, the ALJ's RFC finding here is necessarily deficient because it does not take into account all limitations arising from all impairments, even those that are "not severe," as required by SSR 96-8p. Had the ALJ complied with the regulations, the evidence would have overwhelmingly established that, at the very least, Garcia is far more limited than the ALJ finds, and that she is certainly incapable of performing the jobs of Bottling Line Attendant, Bagger, or Housekeeping Cleaner in any full-time, competitive capacity on a sustained basis.

A party's failure to meaningfully respond to the opposing party's responsive counterarguments constitutes a concession of the counterargument's persuasiveness. *Conden v. Royal Caribbean Cruises Ltd.*, No. 20-22956-CIV, 2021 WL 4973533, at *7 (S.D. Fla. June 21, 2021) (finding that the defendant conceded counterarguments raised in the plaintiff's response by not addressing the counterargument in its reply); *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 857 (N.D. Cal. 2020) (the party's failure to address counterarguments in reply constituted abandonment of position taken in initial brief); *W.*

16

*Flagler Assocs., Ltd. v. City of Miami*, 407 F. Supp. 3d 1291, 1297 (S.D. Fla. 2019) ("The [d]efendant abandoned its argument regarding the [p]laintiff's standing because its [r]eply failed to address any of the [ ] arguments or authority." (alteration added; collecting cases)); *Keepseagle v. Vilsack*, 102 F. Supp. 3d 205, 220 (D.D.C. 2015) (deeming arguments abandoned where the party failed to address in its reply brief the counterarguments raised by the opposing party on the issue). Here, Garcia has failed to respond to the Commissioner's arguments concerning the probative value of the record evidence, as well as the Commissioner's contention that Garcia is merely pointing to other evidence which she believes supports her position, not identifying any failure by the ALJ to properly consider evidence under the regulations.

Moreover -- and for a simpler reason -- Garcia's argument fails on the merits. In *Moore v. Barnhart*, the Eleventh Circuit rejected a similar argument:

> To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work").

405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see also Proenza v. Comm'r of Soc. Sec.*, No. 20-14237, 2021 WL 3073777, at *3 (11th Cir. July 21, 2021) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work. Nor does it undermine the ALJ's determination that she can work."); *Wind v. Barnhart,* 133 F. App'x

17

684, 690 (11th Cir. 2005) (stating "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter*, 791 F.2d at 1547).

The records which Garcia cites to do not contain any information about the impact Garcia's conditions have on her ability to work. Instead, the records contain only Garcia's subjective complaints and the recognition of an impairment. Garcia's claims that the existence of these impairments must mean that she is more limited than the RFC allows is merely attorney rhetoric and untethered to any actual medical opinion.

Accordingly, the ALJ's RFC contains no identified error and there is no basis for remand on this ground.

## VI. Conclusion

The Undersigned **respectfully recommends** that the District Court **deny** Garcia's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter final judgment in favor of the Commissioner.

## VII. Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo*

determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on February 9, 2023.

                                                  Jonathan Goodman
                                                  UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record